# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

## JACKSONVILLE DIVISION

Erica Broodie, individually and on
behalf of all others similarly situated,

Plaintiff,

- against -

Target Corporation,

Defendant

Class Action Complaint

Jury Trial Demanded

Plaintiff Erica Broodie ("Plaintiff") alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.    Target Corporation ("Defendant") sells berry pomegranate flavored water enhancer purporting to get its berry pomegranate taste only from natural flavoring ingredients under its Market Pantry brand ("Product").



## I.    CONSUMER AVOIDANCE OF ARTIFICAL FLAVORS

2.    According to the Wall Street Journal, "As consumer concern rises over artificial ingredients, more food companies are reconstructing recipes" to remove artificial flavors.[1]

3.    This is because consumers try and avoid ingredients made with chemical additives and synthetic solvents in laboratories.

4.    According to Forbes, almost ninety percent of consumers consider foods without artificial flavors to be more natural and healthier than foods with artificial flavors and would pay more for such foods.

5.    Paul Manning, president of Sensient Technologies, affirmed that "Consumer desire for naturally flavored products is an emerging trend."[2]

6.    According to Nielsen's Global Health & Wellness Survey, the absence of artificial flavors is very important for over 40% of consumers.

7.    The trade journal, Perfumer & Flavorist, described "The Future of Artificial Flavors & Ingredients" as bleak, given consumer opposition to these synthetic ingredients.[3]

---

[1] Lauren Manning, How Big Food Is Using Natural Flavors to Win Consumer Favor, Wall Street Journal.

[2] Keith Nunes, Using natural ingredients to create authentic, fresh flavors, Food Business News, Sept. 20, 2018.

[3] Jim Kavanaugh, The Future of Artificial Flavors & Ingredients, Perfumer & Flavorist, June 12, 2017.

8.    According to research from Mintel, consumer avoidance of artificial flavors is just as strong as their desire for natural flavors.[4]

9.    While almost half of Americans seek foods with natural flavorings, only ten percent prefer artificial flavorings.

10.   One survey indicated that more than three in four people worldwide are convinced that artificial flavors have no place in any foods they buy.[5]

11.   Surveys by Nielsen, New Hope Network, and Label Insight concluded that between sixty and eighty percent of the public tries to avoid artificial flavors.

## II.   INCREASED CONSUMPTION OF WATER ENHANCERS

12.   According to Mordor Intelligence's analysis, the domestic market for water enhancers, defined as non-caloric flavored liquid concentrates, is increasing at close to ten percent a year.[6]

13.   Several reasons are behind this explosive growth.

14.   First, rising levels of obesity has made the population more reluctant to

---

[4] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015; Mintel Report, Artificial: Public Enemy No. 1.

[5] What 'Natural' Really Means to Consumers GNT Group's Guide to Global Consumer Demands attests importance of natural colors for future-proof products, July 13, 2017.

[6] Mordor Intelligence, United States Water Enhancer Market – Growth, Trends, Covid-19 Impact, And Forecasts (2023 – 2028)

consume sugary drinks, whether fruit juices or carbonated soft drinks ("CSD").

15.   Second, in place of these calorie-laden drinks, public health officials and the media have emphasized substituting water, a non-caloric and healthier alternative.

16.   However, "many consumers want more from their water" because of its naturally "plain" taste compared to the flavor of the sodas and fruit juices they are giving up.[7]

17.   Coupled with consumer avoidance of artificial flavoring, the demand for water enhancers using only natural flavoring ingredients is significant.

## III.  FLAVOR SOURCE REQUIRED TO BE DISCLOSED

18.   Research shows that "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging to evaluate [any] product," thereby "develop[ing] sensory expectations" about attributes such as its taste and the source of that taste.[8]

---

[7] Isaac Fletcher, Water is Getting a New Image (And Taste) From Enhancers, Food Online, May 21, 2014.

[8] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Products Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Masako Okamoto and Dan Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013.

19.   Consistent with these principles, the Food and Drug Administration ("FDA"), at the direction of Congress, established regulations to prominently inform consumers of the source of a food's main flavor.[9]

20.   First, the FDA distinguished between flavors, which were substances that imparted taste, and food, which provided nutritional value. 21 C.F.R. § 101.22(a)(1), 21 C.F.R § 101.22(a)(3).

21.   Second, it distinguished between natural and artificial flavor.

22.   It defined "natural flavor" as the "essential oil, oleoresin, essence or extractive" from fruits or vegetables. 21 C.F.R § 101.22(a)(3).

23.   Natural flavor compounds include (1) nonvolatiles like sugars, amino acids, fatty acids, and organic acids and (2) volatiles like aromatic hydrocarbons, aldehydes, acetals, ketones, alcohols, esters, and sulfur compounds.

24.   In contrast, "artificial flavor" was defined as substances used to impart flavor from synthetic or artificial sources. 21 C.F.R. § 101.22(a)(1), 21 C.F.R § 101.22(a)(3).

25.   Third, it required that that whenever "[a] label, labeling, or advertising of a food makes any direct or indirect representations with respect to [a] primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means,"

---

[9] This State adopted these federal regulations.

that is considered the "characterizing flavor," and its source must be disclosed to consumers. 21 C.F.R. § 101.22(i)(1).

26.   According to one scholar and expert, this rule "is premised on the simple notion that consumers value 'the real thing' versus a close substitute and should be able to rely on the label to readily distinguish between the two."[10]

## IV.  FLAVOR OF BERRIES AND POMEGRANATES

27.   Taste is a combination of sensations arising from specialized receptor cells in the mouth.[11]

28.   Taste is defined as sensations of sweet, sour, salty, bitter, and umami.

29.   Taste is complex, with the taste of sour including the sourness of vinegar (acetic acid), sour milk (lactic acid), lemons (citric acid), apples and cherries (malic acid), and wines (tartaric acid).

30.   Each of those acids is responsible for unique sensory characteristics of sourness.

31.   Consumer acceptability of the flavor of berries, such as blueberries and raspberries, and pomegranates, is based on their perceived sweetness, sourness, and tartness.

---

[10] Steven Steinborn, Hogan & Hartson LLP, Regulations: Making Taste Claims, PreparedFoods.com, August 11, 2006.
[11] Gary Reineccius, Flavor Chemistry and Technology § 1.2 (2d ed. 2005).

32.   The prototypical blueberry, raspberry and pomegranate tastes are based on the interaction of free sugars, mainly glucose and fructose, volatile compounds, and predominant organic acids to create their unique tart, sour and sweet flavor.[12]

| Fruit | First Predominant Acids | Second Predominant Acids |
|---|---|---|
| Apple | Malic Acid (95%) | Tartaric Acid, Fumaric Acid |
| Apricot | Malic Acid (70%) | Citric Acid, Tartaric Acid |
| Blackberry | Citric Acid | Malic Acid |
| Blueberry[13] | Malic Acid | Citric Acid, Quinic Acid |
| Cherry | Malic Acid (94%) | Tartaric Acid, Succinic Acid |
| Cherry (black) | Citric Acid | Malic Acid |
| Cherry (tropical) | Malic Acid (32%) | Citric Acid |
| Chili Peppers (habanero) | Citric Acid | Malic Acid, Succinic Acid |
| Coconut | Malic Acid | Citric Acid |
| Dragon Fruit | Malic Acid | Citric Acid |
| Grape | Malic Acid (60%) | Tartaric Acid |
| Grapefruit | Citric Acid | Malic Acid |
| Guava | Citric Acid | Malic Acid |
| Kiwi | Quinic Acid, Citric Acid | Malic Acid |
| Lemon | Citric Acid | Malic Acid |
| Lime | Citric Acid | Malic Acid |
| Mango | Citric Acid | Malic Acid, Tartaric Acid |
| Orange | Citric Acid | Malic Acid |
| Peach | Malic Acid (73%) | Citric Acid |
| Pear | Malic Acid (77%) | Citric Acid |
| Pineapple | Citric Acid | Malic Acid |
| Pomegranate | Malic Acid (>50%) | Citric Acid (>22%) |

[12] Y.H. Hui, et al., Handbook of Fruit and Vegetable Flavors, p. 693 (2010).
[13] Across cultivars, such as Highbush, Jersey, etc.

| Raspberry | Citric Acid | Malic Acid, Tartaric Acid |
|---|---|---|
| Strawberry | Citric Acid | Malic Acid, Tartaric Acid |
| Tamarind | Tartaric Acid | Citric Acid, Malic Acid |
| Watermelon | Malic Acid (99%) | Fumaric Acid |

33.   In pomegranates, the prototypical tart and tangy taste is from malic acid, its first predominant acid which constitutes over half of this its organic acids.

34.   For the main cultivars of blueberries, malic acid is the first predominant acid while in raspberries it is the second predominant acid.

35.   A study by Zhang, Jia, et al., concluded that "Sweet and sour are the most important taste of blueberries, and they are produced by sugar and acid, respectively," and that "it is very important to evaluate the composition and levels of sugar and acid in blueberries."[14]

36.   Raspberries are "tart and tangy [and] often enjoyed for [their] sweet and sour flavor."[15]

37.   While its most predominant organic acid is citric acid, "the sour taste of raspberries is the most prominent characteristic."

38.   This is because "Raspberries contain a naturally occurring acid called malic acid [which] is responsible for the[ir] tart and tangy flavor."

---

[14] "Evaluation of Sugar and Organic Acid Composition and their Levels in Highbush Blueberries from Two Regions of China," Journal of Integrative Agriculture, 19.9 (2020): 2352-2361.

[15] Greener Thumb, Why Do Raspberries Taste Sour, Rather Be Gardening, July 29, 2023.

39.   While "The amount of malic acid in raspberries varies depending on the variety and ripeness of the fruit, [] generally, the more ripe the raspberry, the more malic acid it contains."

40.   The amount and proportion of malic acid is a critical factor in producing the preferred tart, sweet and sour berry and pomegranate taste valued by consumers.

## V.   LABEL MISLEADING ABOUT FLAVOR SOURCE

41.   The front label statements of "Berry Pomegranate" and "Natural Flavor With Other Natural Flavor" appeal to the more than seven out of ten consumers who avoid artificial flavors.



42.   By describing the berry pomegranate taste as coming from natural flavoring ingredients, consumers will not expect this to be from artificial flavoring ingredients.

43.   Though the ingredient list in small print on the back lists "Natural Flavors," this is only as the fifth most predominant ingredient by weight, comprising less than two percent of the total, less than "Malic Acid," listed third.

9

**INGREDIENTS:** WATER, CITRIC ACID, MALIC ACID, POTASSIUM CITRATE, CONTAINS LESS THAN 2% GUM ARABIC, NATURAL FLAVORS, SUCRALOSE, ACESULFAME POTASSIUM, SUCROSE ACETATE ISOBUTYRATE, RED 40, BLUE 1, NIACINAMIDE (VIT. B3), PYRIDOXINE HYDROCHLORIDE (VIT. B6), CYANOCOBALAMIN (VIT. B12), POTASSIUM SORBATE (PRESERVATIVE).

44.   Even if a consumer reviewed the fine print ingredient list, they would not know the malic acid used is artificial.

45.   This is because malic acid has two isomers, or arrangements of atoms, L-Malic Acid and D-Malic Acid, which are like right and left-hand versions of the same molecular formula.[16] 21 C.F.R. § 184.1069.

---

[16] Dan Chong and Jonathan Mooney, Chirality and Stereoisomers (2019).

10



46.   L-Malic Acid occurs naturally in berries like blueberries and raspberries and pomegranates, while D-Malic Acid does not occur naturally anywhere.

47.   D-Malic Acid is most found as a racemic mixture of the D and L isomers, or DL-Malic Acid, commercially made from petroleum.

48.   It is made through a catalytic process with numerous chemical reactions, including heating maleic anhydride with water under extreme pressure at roughly 180°C.

49.   This results in an equilibrium mixture of malic and fumaric acids.

50.   The soluble fumaric acid is filtered off and recycled, and the synthetic, or DL-, malic acid is concentrated and crystallized.

51.   Laboratory analysis with chiral HPLC and/or enzymatic methods with D-malate dehydrogenase (D-MDH) concluded or would conclude that the Product uses artificial DL-Malic Acid, by identifying the synthetic D-isomer.

52.   This was because D-Malic acid was preferentially oxidized over L-Malic acid.

11

53.   D-Malic Acid is an artificial flavor because it imparts the taste of berries, such as blueberries and raspberries, and pomegranates, to the Product, rendering "Natural Flavor With Other Natural Flavor" false and misleading.

54.   Federal and state regulations require that because the Product contains DL-Malic Acid that imparts the flavor of berries, such as blueberries and raspberries, and pomegranates, "Berry Pomegranate" is required to "be accompanied by the word(s) 'artificial' or 'artificially flavored,'" such as "Artificial Berry Pomegranate Flavored" or "Artificially Flavored Berry Pomegranate." 21 C.F.R. § 101.22(i)(2).

55.   The combination of DL-Malic Acid with sugars is not equivalent to the natural flavors from berries, such as blueberries and raspberries, and pomegranates.

56.   The addition of DL-Malic Acid imparts, creates, simulates, resembles and/or reinforces the tart, tangy, sour, and sweet taste that berries, such as blueberries and raspberries, and pomegranates, are known for.

57.   Defendant could have added more berry, such as blueberry and raspberries, and pomegranate ingredients or L-Malic Acid from berries, such as blueberries and raspberries, and pomegranates, but used artificial DL-Malic Acid because it cost less and/or more accurately simulated, resembled, and/or reinforced the taste of berries, such as blueberries and raspberries, and pomegranates.

58.   DL-Malic Acid is not a "natural flavor" as defined by federal and state regulations, because it is not from a fruit, vegetable, or other natural source, but from

12

petroleum and made through chemical reactions.

59.    DL-Malic Acid does not supplement, enhance, or modify the original taste of berries, such as blueberries and raspberries, and pomegranates, because it is a core component of the taste of berries, such as blueberries and raspberries, and pomegranates. 21 C.F.R. § 170.3(o)(11).

## JURISDICTION AND VENUE

60.    Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

61.    The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

62.    Plaintiff is a citizen of Florida.

63.    Defendant is a citizen of Minnesota.

64.    The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

65.    The members of the proposed class Plaintiff seeks to represent are more than one hundred, because the Product has been sold at over one hundred Target stores in Florida, and available from Target's website, for not less than the last three years.

66.    Venue is in the Jacksonville Division in this District because Plaintiff resides in Duval County and a substantial part of the events or omissions giving rise

13

to these claims occurred in Duval County, her purchase and consumption of the Product in reliance on the labeling identified here.

## PARTIES

67.  Plaintiff Erica Broodie is a citizen of Duval County, Florida.

68.  Defendant Target Corporation is a Minnesota corporation with a principal place of business in Minnesota.

69.  Defendant operates almost two thousand Target stores in the United States, and almost one hundred and thirty in Florida, selling everything from pajamas to groceries to computers.

70.  While Target sells leading national brands, it sells hundreds of products under the private label Market Pantry brand.

71.  Private label products are made by third party manufacturers and sold under the name of the retailer, or its sub-brands.

72.  Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to national brand counterparts.

73.  Products under the Market Pantry brand have an industry-wide reputation for quality and value.

74.  In releasing products under the Market Pantry brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than

14

the national brands.

75.   Defendant gets national brands to produce its private label items due to its loyal customer base and tough negotiating.

76.   That Market Pantry-branded products met this high bar was proven by focus groups, which rated them above the name brand equivalent.

77.   Private label products generate higher profits for Target because national brands spend significantly more on marketing, contributing to their higher prices.

78.   A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than sixty percent consider them just as good.

79.   Private label products under the Market Pantry brand benefit by association with consumers' appreciation for the Target brand overall.

80.   The development of private label items is a growth area for Target, as they select only top suppliers to develop and produce Market Pantry products.

81.   The Product is available to consumers from Defendant's retail stores and its website.

82.   Plaintiff read and relied on "Berry Pomegranate," and "Natural Flavor With Other Natural Flavors," and the blue and purple coloring on the Product's front label.

83.   Plaintiff expected the Product's berry pomegranate taste to be only from

natural flavoring ingredients because the label said, "Natural Flavor With Other Natural Flavors" and lacked any front label reference to artificial flavoring.

84.   Based on experience as a consumer, Plaintiff expected that if the Product's main taste was from artificial flavoring, this would have been disclosed to her prominently on the front label.

85.   Plaintiff expected the Product's berry and pomegranate taste was from berries such as blueberry and raspberry, and pomegranate, and/or natural flavoring ingredients and not artificial flavoring ingredients.

86.   Plaintiff is part of the majority of consumers who avoid artificial flavors for reasons related to health, nutrition, and the environment.

87.   Plaintiff was unaware the Product contained artificial flavoring ingredients to provide its berry and pomegranate taste because the label said, "Natural Flavor With Other Natural Flavors."

88.   Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at Target retail stores in Duval County, between September 2019 and December 2022.

89.   Plaintiff bought the Product at or exceeding the above-referenced price.

90.   Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components such as getting their main fruit taste only from natural

16

flavoring ingredients.

91.   Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

92.   As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $2.49 for 1.62 oz (48 mL), excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

93.   Plaintiff paid more for the Product than she would have paid had she known the representations were false and misleading, as she would not have bought it or would have paid less.

## CLASS ALLEGATIONS

94.   Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following class:

> **Florida Class:** All persons in the State of Florida who purchased the Product within the statutes of limitations for each cause of action alleged.

95.   Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and

class members are entitled to damages.

96.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

97.   Plaintiff is an adequate representative because her interests do not conflict with other members.

98.   No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

99.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

100.  Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

## COUNT I

## Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*

101.  Plaintiff incorporates by reference preceding paragraphs 1-58.

102.  Plaintiff brings this claim on her own behalf and on behalf of each member of the Florida Class.

103.  Defendant violated and continues to violate Florida's Deceptive and

18

Unfair Trade Practices Act by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of its business.

104. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions, that its taste was from berries such as blueberries and raspberries and pomegranates and/or natural flavoring ingredients and not artificial flavoring ingredients.

105. The material misstatements and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff and the public into believing the Product's berry pomegranate taste was only from natural flavoring ingredients and not added artificial flavoring ingredients.

106. Plaintiff and class members relied upon these representations and omissions about artificial flavoring in deciding to purchase the Product.

107. Plaintiff's reliance was reasonable because of Defendant's reputation as a trusted store in the community for decades, with the Market Pantry brand known for its high-quality products, honestly marketed to consumers.

108. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

109. Defendant's conduct offends established public policy and is immoral, unethical, oppressive, and unscrupulous to consumers.

19

110. Plaintiff and class members are entitled to damages in an amount to be proven at trial.

## COUNT II

### False and Misleading Adverting,
### Fla. Stat. § 817.41

111. Plaintiff incorporates by reference preceding paragraphs 1-58.

112. Plaintiff brings this claim on her own behalf and on behalf of each member of the Florida Class.

113. Defendant made misrepresentations and omissions of material fact, that the Product's berry and pomegranate taste was from natural flavoring ingredients and not artificial flavoring ingredients, through its advertisements and marketing, through various forms of media, product descriptions, and targeted digital advertising.

114. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

115. Defendant knew that these statements were false and/or misleading.

116. Defendant intended for consumers to rely on its false statements for the purpose of selling the Product.

117. Plaintiff and class members did in fact rely upon these statements.

118. Reliance was reasonable and justified because of Defendant's reputation

as a trusted and reliable company, known for its Market Pantry, honestly marketed to consumers.

119. As a result of Defendant's misrepresentations, Plaintiff and class members suffered damages in the amount paid for the Product.

120. Plaintiff and class members are entitled to damages as set forth above.

## COUNT III

### Breach of Express Warranty

121. Plaintiff incorporates by reference preceding paragraphs 1-58.

122. The Product was manufactured, identified, marketed, and sold by Defendant and expressly warranted to Plaintiff and class members that its berry and pomegranate taste was from natural flavoring ingredients and not artificial flavoring ingredients.

123. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

124. Defendant knew the product attributes that potential customers like Plaintiff were seeking, a water enhancer which got its taste from either its main flavoring ingredients, like berries, such as blueberries and raspberries, and pomegranates, or natural flavoring ingredients, instead of artificial flavoring ingredients and developed its marketing and labeling to directly meet those needs

and desires.

125. The representations were conveyed in writing and promised the Product would be defect-free, and Plaintiff understood this meant that its berry pomegranate taste was from its main flavoring ingredients, like berries, such as blueberries and raspberries, and pomegranates, and/or natural flavoring ingredients, instead of artificial flavoring ingredients.

126. Defendant affirmed and promised that the Product's berry pomegranate taste was from its main flavoring ingredients, like berries, such as blueberries and raspberries, and pomegranates, and/or natural flavoring ingredients, instead of artificial flavoring ingredients.

127. Defendant described the Product so Plaintiff and consumers believed its berry pomegranate taste was from its main flavoring ingredients, like berries, such as blueberries and raspberries, and pomegranates, and/or natural flavoring ingredients, instead of artificial flavoring ingredients, which became part of the basis of the bargain that it would conform to its affirmations and promises.

128. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

129. This duty is based on Defendant's outsized role in the market for household products, custodian of the Market Pantry brand.

130. Plaintiff recently became aware of Defendant's breach of the Product's

warranties.

131. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Products' express and implied warranties associated with the Product.

132. Defendant received notice and should have been aware of these issues due to complaints by third parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

133. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

### COUNT IV

### Fraud
### (Fed. R. Civ. P. 9(b) Allegations)

134. Plaintiff incorporates by reference preceding paragraphs 1-58.

135. Defendant misrepresented that the Product's berry pomegranate taste was from its main flavoring ingredients, like berries, such as blueberries and raspberries, and pomegranates, and/or natural flavoring ingredients, instead of artificial flavoring ingredients,

136. Defendant omitted the required "artificially flavored" disclosure from the front label which was required to truthfully identify the source of the Product's berry pomegranate flavor.

137. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of this falsity and deception, through statements and omissions.

138. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

139. To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

140. WHO: Defendant, Target Corporation, made material misrepresentations and/or omissions of fact in its advertising and marketing of the Product by representing its berry pomegranate taste was from its main flavoring ingredients, like berries, such as blueberries and raspberries, and pomegranates, and/or natural flavoring ingredients, instead of artificial flavoring ingredients,

141. WHAT: Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Product's berry pomegranate taste was from its main flavoring ingredients, like berries, such as blueberries and raspberries, and pomegranates, and/or natural flavoring ingredients, instead of artificial flavoring ingredients.

142. Defendant knew or should have known this information was material to

all reasonable consumers and impacts consumers' purchasing decisions.

143. Defendant conducts research on consumer preferences and is aware of consumer demand for products without artificial flavors.

144. Yet, Defendant has represented and/or continues to represent that the Product's berry pomegranate taste was from its main flavoring ingredients, like berries, such as blueberries and raspberries, and pomegranates, and/or natural flavoring ingredients, instead of artificial flavoring ingredients,

145. WHEN: Defendant made material misrepresentations and/or omissions detailed herein, including that the Product's berry pomegranate taste was from its main flavoring ingredients, like berries, such as blueberries and raspberries, and pomegranates, and/or natural flavoring ingredients, instead of artificial flavoring ingredients, continuously throughout the applicable Class period(s) and through the filing of this Complaint or until early in 2023.

146. WHERE: Defendant's material misrepresentations and omissions, that the Product's berry pomegranate taste was from its main flavoring ingredients, like berries, such as blueberries and raspberries, and pomegranates, and/or natural flavoring ingredients, instead of artificial flavoring ingredients, were made in the advertising and marketing of the Product, on the front of the packaging, which all consumers buying would inevitably see and take notice of.

147. HOW: Defendant made written and visual misrepresentations and

omissions in the advertising and marketing of the Product, that its berry pomegranate taste was from its main flavoring ingredients, like berries, such as blueberries and raspberries, and pomegranates, and/or natural flavoring ingredients, instead of artificial flavoring ingredients.

148. As such, Defendant's representations are false and misleading.

149. And as discussed in detail throughout this Complaint, Plaintiff and class members read and relied on Defendant's representations and omissions before purchasing the Product.

150. WHY: Defendant misrepresented that the Product's berry pomegranate taste was from its main flavoring ingredients, like berries, such as blueberries and raspberries, and pomegranates, and/or natural flavoring ingredients, instead of artificial flavoring ingredients, for the express purpose of inducing Plaintiff and class members to purchase the Product at a substantial price premium, in part based on consumer demand for products without artificial flavoring ingredients.

151. As such, Defendant profited by selling the misrepresented Product to thousands of consumers throughout the State of Florida.

## JURY DEMAND AND PRAYER FOR RELIEF

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and

the undersigned as counsel for the class;

2. Awarding monetary, statutory, and/or punitive damages pursuant to applicable laws;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   August 14, 2023

Respectfully submitted,

/s/ William Wright

The Wright Law Office, P.A.
515 N Flagler Dr Ste P300
West Palm Beach FL 33401
(561) 514-0904
willwright@wrightlawoffice.com

*Lead Counsel for Plaintiff*

Sheehan & Associates, P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Counsel for Plaintiff*
**Pro Hac Vice* Application Forthcoming